IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SEREE SULLIVAN,

        Plaintiff,

v.                                                                   Civ. No. 04-864 JH/DJS

AMERICA ONLINE, INC., and
the AOL COMPANIES,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on *Defendant America Online, Inc.'s Motion for Summary Judgment* [Doc. No. 41]. Plaintiff has two remaining claims against the Defendants (collectively, "AOL"): breach of express contract and breach of implied contract. The issue presently before the Court is whether there is a genuine issue of material fact as to each of those claims. After a careful review of the law, the pleadings, and the arguments of the parties, the Court concludes that AOL's motion for summary judgment should be granted.

**FACTUAL BACKGROUND**

This case arises from AOL's decision to terminate Plaintiff Seree Sullivan's ("Sullivan") employment as a supervisor (also known as a "coach") at a customer call center in Albuquerque, New Mexico. The facts, viewed in the light most favorable to Sullivan, are as follows.

Sullivan began working for AOL as a "customer care consultant" in December of 1999. Defendant promoted Sullivan to coach in October of 2001. As a coach, Sullivan was responsible for supervising a team of consultants. Between February of 2002 and May of 2002, AOL received numerous complaints about Sullivan's conduct. These complaints included allegations that Sullivan

wore inappropriately suggestive clothing to work, made sexually explicit comments during crew briefings, used vulgar and inappropriate language, removed or unfastened her clothing on the call center floor in order to display an abdominal scar, rubbed her breasts against a male consultant, and made derogatory comments about consultants as well as other coaches. Sullivan acknowledges that these accusations were made but denies the truth of the complaints against her.

The first person to discuss these accusations with Sullivan was her supervisor, Debbie Petito. Craig Alter, Human Resources Generalist, had discussed the accusations against Sullivan with Petito, but left it to Petito to deal with Sullivan and decide upon the best course of action. According to Sullivan's testimony, Petito told her that one of the complainants was out to get her, and that they had to get him off Sullivan's team. Petito also told Sullivan that one of the consultants was lying out of anger toward Sullivan and took no disciplinary action against her. A short time later, in April of 2002, AOL discharged Petito and Assistant General Manager Carolyn Lindsey became Sullivan's supervisor.

A short time later, Alter conducted an investigation of these allegations. In a May 24, 2002 email to Audra Sedillo, senior human resources manager, and general manager Fran Feldman, Alter said that he had spoken with eight people regarding Sullivan, three of whom said that the inappropriate conduct took place. Although Alter's email is not explicit, this statement implies that the remaining five employees denied the accusations against Sullivan. Alter also stated that he believed that "the three against her (Jeff, Steven, and Matt) have corroborated their stories ... I also had two consultants approach me yesterday ... to let me know that Jeff was trying to recruit them to testify against [Sullivan]." On the other hand, Alter interviewed two coaches who claimed to have been the victims of inappropriate or belittling remarks by Sullivan. Alter interviewed other

2

consultants who supported Sullivan. At that point, Alter was not sure whether or not the allegations against Sullivan were true. However, in his email Alter recommended "corrective action for unprofessional conduct", which is one phase of progressive discipline at AOL, and he specifically mentioned suspension. However, on May 28, 2002, Defendants terminated her employment for "unprofessionalism."

Several documents relevant to the terms of Sullivan's employment are in the record. The job application that Sullivan signed on December 1, 1999 states:

> Regardless of whether or not I become employed by AOL, I recognize that **this application is not and should not be considered as a contract of employment**. I understand that employment at AOL is on an at will basis, and that my employment may be terminated with or without cause, and without notice, at any time, at my option, or that of AOL. I further understand that no AOL employee or representative has the authority to enter into a contract regarding duration or terms of conditions of employment other than an officer or official of AOL and then **only by means of signed written document**.

(emphasis added). The December 13, 1999 letter from AOL's General Manager to Sullivan in which he offered her employment states, "Your employment at America Online is at will and you or the company is free to terminate the employment at any time with or without cause." Sullivan signed this offer letter and dated it December 10, 1999. The AOL Employee Handbook in force during Sullivan's employment states, in pertinent part:

> Since employment with AOL is based on mutual consent, both the employee and AOL have the right to terminate employment at will, with or without cause, at any time.
> \*\*\*
> Individuals who engage in any form of harassment, or knowingly make false complaints of harassment, face serious consequences: disciplinary action up to and including termination of employment.

3

Similarly, AOL's "Business and Personal Conduct" policy, signed and dated by Sullivan on December 10, 1999, states:

> If you commit any of the following actions, it will be considered grounds for immediate disciplinary action up to and including immediate termination of employment:
> 3. Making or publishing false, vicious or malicious statements concerning an employee, department, or the company.
> \*\*\*
> 8. Disrespectful or discourteous conduct to customers, supervisors, peers or other personnel.
> \*\*\*
> 15. Harassment of any kind, which is defined as derogatory comments, inappropriate gestures, offensive visual material or hostile behavior that another individual finds offensive. Discrimination on the basis of race, religion, national origin, age, sex, sexual orientation, disability or any other personal characteristic will not be tolerated within the AOL Community.

Sullivan argues that Defendants failed to fairly and properly investigate the events leading to her termination and that their decision to fire her was based upon false allegations. She also contends that she had express and implied employment contracts that constrained AOL to follow its progressive discipline policy and refrain from terminating her employment without cause. Her Amended Complaint asserts claims breach of express and implied employment contract.

## DISCUSSION

### I.    BREACH OF EXPRESS CONTRACT

In Count I of her First Amended Complaint, Sullivan alleges that she had an express contract with AOL which provided that her employment they would properly investigate the charges against her and then, if necessary, implement the steps of progressive discipline, rather than terminating her employment outright. However, Sullivan points to no evidence of an express contract between the parties on these issues. She disclaims reliance upon AOL's written progressive discipline policy,

arguing that the policy was not in effect during the course of her employment. Instead, she argues that, through the actions and verbal representations of its supervisors and managers, AOL created a contract with her that bound it to follow the steps of progressive discipline and limited its ability to terminate her employment at will. Sullivan seems to conflate the concepts of express and implied contracts.[1] However, she has come forward with no evidence to create a genuine issue of material fact as to the existence of an *express* contract. Rather, her arguments all go to the existence of an implied contract. Accordingly, AOL is entitled to summary judgment on Sullivan's claim for breach of express contract.

## II.  BREACH OF IMPLIED CONTRACT

In Count II of her First Amended Complaint, Sullivan alleges that she had an implied contract of employment with AOL that limited its ability to discharge her at will. In New Mexico, an employment relationship is "at will" and either the employer or the employee may terminate the relationship absent an express contract to the contrary. *See Gormley v. Coca-Cola Enters.*, 135 N.M. 128, 134, 85 P.3d 252, 258 (2003) (citing *Lopez v. Kline*, 124 N.M. 539, 953 P.2d 304 (1997)). An exception to the general rule, however, exists when there is an implied contract limiting the employer's authority to discharge. *See id.* (citing *Lopez v. Kline*, 124 N.M. at 306, 953 P.2d at 541). An implied contract may be found (i) in written or oral representation; (ii) in the parties' conduct; or (iii) in a combination of representations and conduct. *See id.*, 135 N.M. at 134-35, 85 P.3d at 258-59 (citing *Newberry v. Allied Stores, Inc.*, 108 N.M. 424, 427-28, 773 P.2d 1231, 1234-35 (1989)). In *Gormley v. Coca-Cola Enterprises*, the Court of Appeals held that, whether an implied contract

---

[1] *See, e.g.*, Plaintiff's Response Brief at 15 ("Defendant's conduct, actions and verbal statements established an expressed or implied employment contract.").

exists is a question of fact, based on the totality of the circumstances, including the employer's oral, explicit, and definite representation. *See* 108 N.M. at 134-35, 85 P.3d at 258-259 (citing *Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 669, 857 P.2d 776, 780 (1993); *Garrity v. Overland Sheepskin Co.*, 121 N.M. 710, 917 P.2d 1382 (1996)).

### A. "No Oral Modification" Clause in the Employment Application

AOL argues that, as a matter of law, there can be no implied contract based upon alleged oral statements made to Sullivan by AOL's representatives because the parties have "an agreement" that the terms of her employment may only be modified in writing. To this end, AOL relies upon Sullivan's December 1, 1999 employment application.

In *Chavez v. Manville Products Corp.*, 108 N.M. 643, 777 P.2d 371 (1989), the case relied upon by AOL, the plaintiff-employee had an express employment contract executed in 1965, when plaintiff began his employment. The contract provided that it could be modified only by a written instrument. *Id.* at 645, 777 P.2d at 373. In light of this valid and express contractual provision, the New Mexico Supreme Court held that the employee could not enforce an implied contract based upon oral representations made to him by his employer. *Id.* at 646, 777 P.2d at 374. However, *Chavez* is distinguishable from this case. In *Chavez*, it was undisputed that the parties entered into a valid, enforceable employment contract and that the contract contained a "no oral modification" clause. However, unlike in *Chavez*, the "no oral modification" clause at issue in this case is not contained in a contract that is binding on the parties. Rather, the clause is set forth in an *application* for employment. Significantly, that application (presumably drafted by AOL) expressly states that it "is not and should not be considered as a contract of employment." Further, the application lacks the most fundamental requirement for formation of a contract: adequate consideration. As the

6

application's text makes clear, AOL is offering nothing, giving up nothing, and bound to do nothing by virtue of the application, which purports to bind only the applicant. In the absence of valid consideration and in the face of the express declaration that it is not a contract, the Court concludes that the application is not an enforceable contract as to the terms of any possible future employment relationship that might arise from the application. Accordingly, the Court finds that the language in Sullivan's application for employment does not in itself bar the existence of an implied contract based on oral statements by Sullivan's supervisors.

### B. Claim for Breach of Implied Contract

In this case, Sullivan contends that the Defendant's oral representations and the parties' conduct created an implied contract of employment that provided that Defendant would terminate Sullivan's employment only for good cause. Sullivan marshals the following evidence in support of her claim of the existence of an implied contract.

Sullivan testified at her deposition that she was told by assistant general managers, personnel from the human resources department, and other coaches (including her coaches Debbie Petito and James Pyle, as well as Craig Alter and general manager Fran Feldman) that there were two things that would get you fired from AOL: failure to attend work, and doing some thing "stupid." Sullivan stated, "What we're told is that we will be worked with no matter what, there is always help, always, always help, always work, always to be worked with, always fairness, in that you're not—you're not fired just randomly, you're not ever slammed without cause, and the cause is to be addressed, and that they try to work with you on the cause, or alleged cause, before they just fire you." Sullivan Depo. at p. 237. Sullivan also testified that when she herself became a coach and therefore was in a supervisory position, she was told that if she had an issue with a consultant, she had to follow the

7

steps of progressive discipline. *Id*. at 238-39. Alter, a human resources generalist for AOL, testified at his deposition that AOL subscribes to a policy of progressive discipline, and did so throughout the period during which it employed Sullivan. Alter Depo. at pp. 16-21, 24. After he completed his investigation of the accusations against Sullivan, Alter recommended corrective action or suspension, not termination. *Id*. at 93-94. Alter also testified that it would have been a good idea to afford Sullivan opportunities for corrective action to deal with her alleged unprofessional conduct, such as counseling and training. *Id*. at 99-100. In addition, Sullivan argues that AOL's written policy of thoroughly investigating harassment claims means that it could not terminate her employment until it had completed a thorough investigation of the claims against her, thereby modifying its right to terminate her at will.

However, AOL points to the existence of explicit statements in its handbook notifying employees that their employment is at will, AOL's Ex. 6, and that employees who engage in harassment are subject to immediate discipline up to and *including* termination. AOL's Exs. 5 and 7. Finally, AOL presents the affidavits of Alter and Sedillo, who state that supervisors at AOL have the discretion to either employ the steps of AOL's progressive discipline or to skip those steps altogether as they deem necessary under the circumstances, and that in certain instances AOL has terminated employees without following the steps of progressive discipline. AOL Exs. 8, 12. AOL also points to Sullivan's statements in her deposition in which she admitted that there would be some instances, such as physical violence or fraud, when AOL could terminate an employee outright without resorting to the use of progressive discipline. Sullivan Depo. at pp. 241-45. Because of this admission, AOL argues that Sullivan cannot claim that AOL has promised to use progressive discipline in all circumstances.

The question before the Court is whether Sullivan has presented sufficient evidence to create a genuine issue of fact as to whether AOL has created a reasonable expectation that she would be terminated only for cause. The existence of an implied contract involves a determination of whether an employee's expectations regarding the terms of her employment are reasonable. *See Hartbarger*, 115 N.M. at 672 ("An employer does not have to issue a policy statement limiting its power to discharge, but if the employer chooses to do so and creates a reasonable expectation on the part of the employee, it is bound to fulfill that expectation."). This, in turn, depends in large measure upon whether promises or offers made by the employer were sufficiently explicit to give rise to the reasonable expectations by the employee. *Id*. ("In examining implied employment contract cases, we always have required that the *promise* that is claimed to have altered the presumed at-will term *be sufficiently explicit* to give rise to reasonable expectations of termination for good cause only.") (emphasis in original).

Court concludes that, under the totality of the circumstances, the evidence is insufficient to create a genuine issue of material fact on the question of whether an implied contract exists that altered the at-will employment relationship. Even when viewed in the light most favorable to Sullivan, the alleged statements by her supervisors are too general and non-specific to create a reasonable expectation that she would be terminated only for cause. This is particularly true when viewed in light of provisions in the employee handbook in effect during Sullivan's employment which clearly state that employment is at will and that discipline for certain conduct, including harassment, may include termination. Sullivan does not dispute that the those provisions were in effect during the course of her employment. Furthermore, the record does not contain evidence that AOL used progressive discipline as to all employees or with regard to all misconduct; rather, the uncontroverted

9

affidavits of Sedillo and Alter demonstrate that, particularly as to supervisory employees (including coaches like Sullivan), the use of progressive discipline was discretionary. Furthermore, Sullivan has not come forward with evidence that AOL has created an expectation by always using progressive discipline when one of its employees is accused of the same type of misconduct of which she was accused. The evidence regarding vague statements by Sullivan's supervisors and Alter's testimony that AOL has a progressive discipline policy does not, viewed in the totality of the circumstances, create a reasonable expectation that AOL had relinquished its right to terminate at will. Accordingly, AOL is entitled to summary judgment on this claim as well.

**IT IS THEREFORE ORDERED** that *Defendant America Online, Inc.'s Motion for Summary Judgment* [Doc. No. 41] is **GRANTED** and Plaintiff's claims for breach of express contract and breach of implied contract will be dismissed.

_____
**UNITED STATES DISTRICT JUDGE**